COURTLANDT KELSEY, Appellant, *v.* THE NORTHERN LIGHT OIL COMPANY OF NEW YORK, Respondents.

The defendant, a stock company, was formed, and A., one of its projectors, subscribed for certain shares of its stock. He employed L. to dispose of stock in the company. The plaintiff, a purchaser from L., sought to rescind his contract of purchase, and to recover from the company the money already paid by him, on the ground of L.'s fraudulent misrepresentations. On the trial, evidence was offered tending to show that the projectors of the company had agreed to subscribe for its whole stock; that A. had no authority to act as its agent, and that any stock ordered by him to be sold was only such as he had subscribed for. This evidence was controverted.—*Held*, that it was error for the court to take from the jury the question of ownership, and whether L., was merely the agent of A., or was also agent of the company.—*Held*, further, that if the plaintiff had purchased stock owned by A., he could not maintain an action against the company for the recovery of money paid for the stock.

The company, in its prospectus, set forth a description of ten tracts of land, or interests in land, which it proposed to purchase. It purchased eight of those specified, but was unable to secure the other two on account of defect in the title.—*Held*, that in an action brought for fraud in the representations of the prospectus, it was error for the court to charge, if upon the prospectus the plaintiff had a right to believe that it was reasonably certain that the company would acquire the property, and that the company was organized with a view to the ownership of those pieces of property, then, if it did not obtain them, the plaintiff would be entitled to recover.

(Argued April 26th: decided May 23d, 1871.)

APPEAL from the order of the General Term of the Supreme Court, in the first judicial district, reversing the judgment rendered upon the verdict of a jury in favor of plaintiff.

This action was brought to recover back from the North-

ern Light Oil Company the sum of $1,000, which the plaintiff alleged he had paid to the company on a subscription by him, for one hundred shares of its capital stock, on the ground that such subscription had been procured by false and fraudulent representations made by the company, and that the plaintiff had, upon the discovery by him of the fraud, rescinded the contract, tendered back to the company the stock he had received, and demanded a return of the money he had paid, which demand was not complied with.

The complaint alleged that the company, " for the purpose of effecting sales of its capital stock, and inducing the plaintiff and others to subscribe therefor, caused certain prospectuses to be issued and distributed by its officers and agents, and also certain advertisements to be published in the public newspapers of the city of New York, and elsewhere, stating " (to give the substance of the representations alleged to have been false), that the company had, among other pieces of property, an interest in the " Smith Jones " farm on Oil creek, Venango county, Pennsylvania, namely : Four-ninths of all the oil on three acres of said farm ; and an interest in the " Widow McClintock " farm, namely : One-fourth of all the oil in the " Hammond " well, which was one of the largest flowing wells on the creek, and averaged more than 200 barrels of oil a day ; that the company's property consisted of about 270 acres in fee and lease-hold interest, and about 200 acres in fee simple, on which were thirty-eight wells, either then being drilled, or pumping, or flowing ; and that from the wells then in operation the product to the company was over 125 barrels of oil per day.

The falsity of the representations was alleged to consist in this : That the company did not own any interest whatever, either in the " Smith Jones " farm, or in the " Hammond " well, on the " Widow McClintock " farm ; that there were not thirty-eight wells in progress or in operation on the property of the company ; and the product of oil from the property of the company was much less than 125 barrels per day ; and that the falsity of the representations in these respects was known to the officers of the company.

The answer denied the making of any of the representations alleged, and set forth that the plaintiff did not acquire his stock from the company, but from certain other parties. It admitted that the company did not own any interest in the "Smith Jones" farm, or the "Hammond" well, the titles to those pieces of property having been rejected as invalid.

The plaintiff proved by one Philip A. Lockwood that he (Lockwood) sold to the plaintiff 100 shares of the stock of the company, and that he acted in making such sale under the employment and as the agent of a firm called Avis, Plummer & Co. He obtained this employment by writing a letter to a firm styled John Boyce & Son, who were named in an advertisement in a newspaper as subscription agents of the company. It appears that there was a connection between John Boyce & Son and Avis, Plummer & Co., and that the letter thus written by Lockwood came to the hands of Avis, of the latter firm, who called upon Lockwood and employed him. Avis gave to Lockwood several papers relating to the enterprise of forming the Northern Light Oil Company. These were: 1. A paper entitled "mining affairs." 2. A paper entitled "Northern Light Oil Company of New York and Pennsylvania." 3. A paper entitled "prospectus of the Northern Light Oil Company of New York," with a subscription paper attached thereto, which the plaintiff signed.

These papers were exhibited by Lockwood to the plaintiff and the latter signed the subscription paper and paid Lockwood $300, which the latter remitted to Avis, Plummer & Co., and received from them a receipt therefor, signed by Silvanus J. Macy, "trustee." He subsequently received from the plaintiff other sums on account of this stock, which he remitted to Avis, Plummer & Co., or to Macy, directly, and received therefor like receipts, signed by Macy in like manner, and after the requisite number of payments were thus made, he received from Macy a certificate that the plain-

tiff was entitled to 100 shares of the stock of the company, and delivered it to the plaintiff.

The contents of these papers, so far as they bear upon the points decided, are sufficiently stated in the opinion of the court.

At the conclusion of the trial the defendant's counsel asked the court to charge five propositions, of which the judge charged the fifth as requested and refused to charge the others. Of these, the first, second and fourth were that there was not sufficient evidence to establish certain facts. The third is exactly stated at the beginning of the opinion of the court, and was to the effect, that the plaintiff could not recover if Avis was acting for himself and not the company in employing Lockwood.

The defendants excepted to the charge " that the company did receive the avails of that money ; " that is, of the money paid by the plaintiff to Lockwood.

The defendants further excepted to so much of the charge " as leaves it to the jury to determine whether the prospectus was a declaration of intention or design to acquire certain property," and in particular to that part of the charge which is in the following words : " You will determine, therefore, in the first place, whether the prospectus was simply a declaration of intention or design to accomplish these results if they could. If upon this paper the plaintiff had the right to believe that it was reasonably certain that the company would acquire the property, and that the company was organized with a view to ownership of these pieces of property, then if they did not obtain it, he would be entitled to recover." The jury found a verdict for the plaintiff.

*William Henry Arnoux*, for the appellant.

*James C. Carter*, for the respondent. A representation, the falsity of which will avoid a contract, or afford a ground of action for damages, must purport to be an existing fact. (*P. & J. P. Plankroad Co.* v. *Griffin*, 21 Barb., 454, 466 ; see, also, *Kennedy* v. *The Panama, etc., Mail Co.*, 2 Law

Rep., Q. B., 580.) The construction of all writings, when no parol evidence is received, belongs exclusively to the court. (1 Greenleaf on Ev., § 277, note.) The contract sought to be rescinded, was not made between the plaintiff and the company. (*H. & D. Plankroad Co.* v. *Rice*, 7 Barb., 157; *T. & B. R. R. Co.* v. *Tibbets*, 18 Barb., 297; *P. & J. P. Plankroad Co.* v. *Griffin*, 21 Barb., 454; *R. & W. Plankroad Co.* v. *Barton*, 16 N. Y., 457.)

GROVER, J. The court erred in refusing to charge the jury as requested by defendant's counsel, that the plaintiff could not recover, if the jury believed that Mr. Avis, in employing Mr. Lockwood to dispose of stock in the company, or to procure subscriptions therefor, was acting, not as the agent of the company, but for the purpose of disposing of stock in the company which he, Mr. Avis, had agreed to take, at or about the time of the formation of the company. Upon this question the testimony was conflicting. There was no question but that Lockwood, who procured the subscription of the plaintiff for stock, was employed for this purpose by Avis, and derived all his authority for this purpose from him. On the part of the plaintiff, evidence was given tending to show that Avis was employed by the company to procure subscriptions to and effect sales of stock belonging to the company, for its benefit, as its agent. On the part of the defendant, evidence was given tending to prove that the projectors of the company had severally agreed to take portions of the stock, in the aggregate amounting to the entire stock of the company; that Avis was one of these projectors, and that he agreed to take five thousand shares at ten dollars each; that he was never in any way employed by the company, as its agent or otherwise, to procure subscriptions to or otherwise to dispose of its stock; that he employed Lockwood, on his own account, to dispose of stock which he had agreed to take for himself or for his firm. There was no such preponderance in the testimony as to authorize the judge to take the question from the jury, or to direct a verdict for the plaintiff.

The question should, therefore, have been submitted to the jury. It is obvious that the plaintiff could not maintain an action against the company for the recovery of the money paid for the stock, if Avis was his vendor, upon the ground claimed, viz., that he had rescinded the contract on the ground of misrepresentation of the property owned by the company. This error would require an affirmance of the order appealed from, but as the case presents another question which may affect the rights and liabilities of the defendant, it is proper that the court should consider and pass upon that also. The defendant's counsel excepted to the following portion of the charge: " You will determine, therefore, in the first place, gentlemen, whether the prospectus was simply a declaratiðn of intention or design to accomplish these results if they could. If upon this paper the plaintiff had the right to believe that it was reasonably certain that the company would acquire the property, and that the company was organized with a view to the ownership of these pieces of property, then, if they did not obtain it, he would be entitled to recover." The verdict for the plaintiff may have been rendered solely upon this portion of the charge. To determine its correctness, we must not only examine the prospectus itself, but also the extrinsic facts in reference to which it was prepared, and, so far as these facts were known to the parties, in the light of which it must be construed, together with the extent of the failure of the company to obtain title to all the property specified in the prospectus. It may be remarked that there was no conflict in the testimony as to any fact bearing upon the construction, except as to whether the defendant was incorporated before or after the plaintiff .subscribed for the stock. The paper in question was headed: " Prospectus of the Northern Light Oil Company of New York; Lands of the Company all on Oil creek, Venango county, Pennsylvania," and proceeds as follows: " George A. Boyce, Avis, Plummer & Co., of New York, and associates, propose to organize a company under the general mining laws of the State of New York, with a capital

of $1,000,000, consisting of 100,000 shares of the par value of ten dollars, to purchase and work the following petroleum oil lands and interests." Then follows a specific location and description of ten different pieces of property, each containing either a quantity of land or an interest in some existing oil well, or both. Then follows a recapitulation, in which the statement is as follows: The company's property now comprises about 270 acres in fee and lease-hold interests, and about 200 acres in fee simple, adding a statement of the number of wells thereon in process of drilling, and those completed and either pumping or flowing wells, with the quantity of oil obtained therefrom, and the price of the oil and the dividends that could be paid upon the stock of the company, and then proceeds as follows: Whereas, George A. Boyce & Avis, Plummer & Co., of 63 Pearl street, New York city, and their associates, propose to organize a company under the general mining and manufacturing laws of the State of New York, to be known as the Northern Light Oil Company, with a capital of $1,000,000, consisting of 100,000 shares at the par value of ten dollars per share, whereas, said company intended to purchase certain oil and mineral lands situated in the township of Alleghany and Cornplanter, county of Venango, and State of Pennsylvania, and issue in payment therefor, 100,000 shares of the capital stock of said company; now, therefore, we, the undersigned, hereby subscribe, each for himself, the amount or number of shares set opposite our respective names, toward purchasing the annexed schedules of property at $1,000,000. And it is hereby agreed and understood, that all moneys so subscribed shall be paid to a party or trustees, elected by the subscribers, after the whole amount of stock shall have been taken. Then follows a statement specifying the installments for payment of the stock subscribed for, and the times when payable.

This was the prospectus signed by the plaintiff in reference to which the charge excepted to was made. The statement in the recapitulation of what the property of the company consisted, must be construed in reference to the preceding and

succeeding clauses of the paper so construed. No one could understand that the company, if then incorporated, actually had the title to any of the real estate specified in the prospectus. The object of the subscription as stated, was to enable the company to purchase the property specified for $1,000,000. There was no assurance that the company had already acquired title, but only of an intention to purchase and operate it for oil purposes. There was no question made as to the entire good faith of the defendant. The company was incorporated and proceeded to acquire title to the property, and did obtain title to eight parcels of the property. It failed to obtain title to two of the parcels, for the reason that they were so situated that a satisfactory title thereto could not be obtained. The company purchased other land which it believed of equal value for oil purposes in the place of one of the parcels it failed to procure. It retained in its treasury $75,000 in cash, which was the price of the remaining parcel, title to which could not be obtained. To hold, that after all this had been done by the company in good faith, the plaintiff had the right to rescind his contract for taking stock in the company, and recover from it the money paid therefor, in case a jury should find he had the right to believe that it was reasonably certain that the company would acquire each and every parcel of the property, and that the company was organized with a view to ownership of these pieces of property, would operate as a great hardship upon the other stockholders. The money of all has been, by the company, invested in real estate, pursuant to the intention upon which the company was organized. Doubtless all believed that the company would be able to purchase all the property specified in the prospectus, but each must have known that this was more or less contingent, depending upon the willingness of the then owners to sell and their ability to give a good title. As to two of the parcels, the case shows that a good title could not be obtained by the company. This risk each stockholder assumed for himself to the extent of his interest in the com-

pany. The corporation, when organized, became the owner of all money that had been paid for its stock, and it had the right in good faith to proceed in the execution of the objects for which it was created. This it did by appropriating, so far as it appears, in good faith, its funds to the purchase of the property which it was designed it should acquire, so far as such lands could be purchased and a satisfactory title obtained. The unforseen obstacle which prevented the purchase of two of the intended parcels was a misfortune which should be shared by all the stockholders, and if a loss was thereby sustained, such loss should be shared by all in common. The effect of the charge was to relieve the plaintiff entirely at the expense of some or of all the others. The error of this portion of the charge was not obviated by the further instruction that they must further find that it was material to the plaintiff that the company should own every parcel. If this was material to the plaintiff, it was equally so to the other stockholders. Had the plaintiff commenced an action for a distribution of the assets of the company before any purchase had been made, upon the ground that it had become impossible to carry its objects into effect, the case would have been different. Then equal justice could have been done to all. Now, none can be relieved, except at the expense of others equally innocent of intentional wrong as the plaintiff. *Gerhard* v. *Bates* (75 Eng. Com. Law, 475); *Biddle* v. *Levy* (2 id., 202); *Greenman* v. *Low* (4 Bos., 337), cited by the learned judge below in his dissenting opinion, were all cases of fraud, and have no application to the facts of this case. I have not referred to the other papers shown to the plaintiff to induce him to subscribe, for the reason that they have no bearing upon the question presented by the exception to the charge. The order of the General Term reversing the judgment for plaintiff and directing a new trial, must be affirmed, and judgment final given for the defendant, with costs upon the stipulation.

All concurring except PECKHAM, J., not voting. Judgment reversed.